FILED
US DISTRICT COURT
DISTRICT OF ALASKA

2005 NOV 30 _ PM 4: 14

Roger F. Holmes, Esq.
BISS & HOLMES
3948 Clay Products Drive
Anchorage, Alaska 99517
Telephone: (907) 248-8013
Facsimile: (907) 243-6695
Attorney for Plaintiff
Great Divide Insurance Company

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | | |
|---|---|---|
| GREAT DIVIDE INSURANCE COMPANY, | ) ) ) | |
| Plaintiff, | ) ) | A 0 5 - 2 8 2 · CV |
| vs. | ) ) | Case No. _____ |
| HALLMARK INVESTMENTS, LLC, an Alaska Limited Liability Company, and ADALBERTO PIONER, | ) ) ) ) | **COMPLAINT FOR DECLARATORY RELIEF** |
| Defendants. | ) ) ) | |

Plaintiff, Great Divide Insurance Company ("Great Divide"), alleges as follows:

1.  Great Divide is a corporation organized and existing under the laws of the State of North Dakota with its principal place of business in the State of Arizona.

2.  Great Divide is authorized to transact business in the State of Alaska, has paid its biennial corporation taxes last due, filed its biennial report for the last reporting period and has satisfied all other conditions precedent to bringing and maintaining this action.

3.    Defendant, Hallmark Investments, LLC ("Hallmark"), is an Alaska Limited Liability Company with its principal place of business in Alaska.

4.    Adalberto Pioner (the "Pioner") is a resident of the State of Alaska.

5.    This Court has original jurisdiction over the subject matter of this action pursuant to 28 U.S.C., §§ 2201 and 1332 as this action is a declaratory judgment action between citizens of different states and the amount in controversy exceeds the sum of $75,000 exclusive of interest and costs.

6.    Venue is proper in this Court pursuant to 28 U.S.C., § 1391.

7.    Great Divide issued two general liability insurance policies to Hallmark identified as Policies No. GC05333 and GC05333-01 (the "Policies") covering policy periods from 8/25/02 to 8/25/04.  Each policy provides coverage of $1 million per occurrence.

8.    On or about December 11, 2002, Pioner entered into an agreement with Hallmark for the purchase of a new residence to be constructed by Hallmark on Lot 17, Block 1, Olympus Subdivision, a/k/a 9180 Aphrodite Way, Anchorage, Alaska.

9.    Subsequent to the purchase of that residence, a dispute has arisen between Pioner and Hallmark resulting in claims made by Pioner against Hallmark.  Pioner has filed suit against Hallmark in the Superior Court for the State of Alaska, Third Judicial District at Anchorage, **Exhibit 1**.

BISS AND HOLMES
ATTORNEYS AT LAW
3948 CLAY PRODUCTS DRIVE
ANCHORAGE, AK 99517
(907) 248-8013

10.    Hallmark has tendered the defense of the Pioner lawsuit to Great Divide, which has agreed to provide Hallmark with a defense of that action under a reservation of rights, **Exhibit** **2**.  Hallmark has elected to be defended in the Pioner lawsuit by independent counsel.

11.    Great Divide is entitled to a declaration that there is no liability coverage for the damages being asserted against Hallmark by Pioner.

12.    Great Divide is entitled to a declaration that there is no duty to defend Hallmark against the allegations of Pioner.

WHEREFORE, Great Divide asks the Court for the following relief:

A.    Entry of an order that Great Divide has no obligation to pay any of the damage assessed against Hallmark in the underlying lawsuit against it brought by Pioner.

B.    Entry of an order that Great Divide has no obligation to provide for the defense of Hallmark in the underlying lawsuit brought against it by Pioner.

C.    An award of its costs and attorney's fees.

D.    Such other relief as the Court may deem just and equitable.

BISS AND HOLMES
ATTORNEYS AT LAW
3948 CLAY PRODUCTS DRIVE
ANCHORAGE, AK 99517
(907) 248-8013

DATED at Anchorage, Alaska, this ___29___ day of November, 2005.

BISS & HOLMES
Attorneys for Plaintiff
GREAT DIVIDE INSURANCE CO.

By: _____
Roger F. Holmes
ABA No. 7011060

IN THE SUPERIOR COURT FOR THE STATE OF ALASKA

THIRD JUDICIAL DISTRICT AT ANCHORAGE

ADALBERTO PIONER,                    )
                                     )
                Plaintiff,           )
                                     )
vs.                                  )
                                     )
HALLMARK INVESTMENTS, LLC,           )
an Alaska Limited Liability Company, )
                                     )
                Defendant.           )
_____)    Case No. 3AN-04-12388 Civil

**COMPLAINT**

For his complaint, the plaintiff, Adalberto Pioner, alleges the following:

**GENERAL**
(Common to all Counts)

1.     Plaintiff, Adalberto Pioner ("Pioner"), is an individual residing in Anchorage, Alaska.

2.     Defendant, Hallmark Investments, LLC ("Hallmark"), is a Limited Liability Company formed under the laws of the State of Alaska.  Hallmark is engaged in the business of providing new homes.  Its principal place of business is in Anchorage, Alaska.

3.     Personal jurisdiction and venue are in all ways proper in the Superior Court, Third Judicial District, State of Alaska

4.     On or about December 11, 2002, the plaintiff entered into an agreement with defendant for the purchase of a new home to be constructed at Lot 17, Block 1 Olympus Subdivision in Anchorage, Alaska.  That property is located within the Third Judicial District, State of Alaska.

RONALD F. BLACK & ASSOCIATES, LLC
1500 WEST 33ᴿᴰ AVENUE, SUITE 100
ANCHORAGE, ALASKA 99503
TELEPHONE (907) 868-5052 • FACSIMILE (907) 929-2994

Exhibit _____ 1
Page ____ 1 ____ of ____ 7 ____ Pages

5.    As part of the bargain, Hallmark Investments, LLC was asked to, and gave, express and implied warranties. The Agreement to Purchase expressly states that Builder warranties "survive closing."

6.    Hallmark Investments, LLC failed to provide certain documents as is required by State Law. In particular, Hallmark Investments, LLC did not provide plaintiff with the Public Offering Statement required by the Alaska Uniform Land Sales Practices Act, AS 34.55.04 *et seq*.

7.    Plaintiff performed each and every obligation required of him under the Purchase Agreement, and defendant is in no way excused from its requirements to fully perform under the contract. Closing occurred on or about July 11, 2003. At the time of closing, the plaintiff, Adalberto Pioner, paid the Contract Sales Price of $254,430.00 to, or on behalf of, Hallmark. Mr. Pioner also paid closing costs in the additional amount of $10,211.41, bringing the total purchase price to $265,941.41, not including other improvements later added by Mr. Pioner to the home and subsequent to the date of closing.

8.    On or about July 12, 2003, a representative of Hallmark Investments, LLC performed a post-sale "walk-through" of the residence. Several hairline cracks and sticky doors and misaligned cabinetry were noted during that inspection. During the walk-through, some standing water was also detected in the crawl space of the home. Repairs of these defects were requested by Pioner and Hallmark's representative assured him that Hallmark would make the necessary repairs.

9.    Since July 12, 2003, Hallmark Investments, LLC has made various attempts at repair. All such attempts have failed. Not only do problems continue to persist within the home, they are steadily becoming worse.

RONALD F. BLACK & ASSOCIATES, LLC
1500 WEST 33RD AVENUE, SUITE 100
ANCHORAGE, ALASKA 99503
TELEPHONE (907) 868-5052 • FACSIMILE (907) 929-2994

Complaint
*Pioner v. Hallmark Investments, LLC*, Case No. 3AN-04-____
Page 2 of 7

Exhibit ___1___
Page ___2___ of ___7___ Pages

10.    The builder, Hallmark Investments, LLC, or one of its subcontractors (for whom Hallmark is responsible) failed to provide the residence with an adequate foundation. In particular, either it, or its subcontractor, founded the residence on highly compressible, organic soils.

11.    As a direct and proximate result of Hallmark's (or Hallmark's subcontractor) failure to remove peaty soils prior to building the home, other parts of the work have suffered damage. In particular, footings and masonry stem walls have developed cracks. The residence as a whole has settled by up to several inches, with differential settlement being a significant portion of the overall total settlement that has occurred.

12.    As a direct and proximate results of Hallmark's (or Hallmark's subcontractor) failure to remove peaty soils prior to building the home other parts of the work have suffered damage. In particular, the structural frame of the home has racked, and otherwise become distorted. Some mechanical ducting has pulled apart due to this condition. Cracks, a few as wide as ½-inch, have formed in gypsum wallboard. Doors and windows are misaligned.

13.    The home is structurally unsafe.

14.    John A. DePorter is an owner and member of Hallmark Investments, LLC. Mr. DePorter has significant managerial control over the business affairs of that enterprise, including the marketing and disposition of subdivided lands built on by Hallmark. As such, Mr. DePorter is one such person with sufficient managerial oversight and control to acquire personal liability under AS 34.55.030(c).

## COUNT ONE
### BREACH OF EXPRESS AND IMPLIED WARRANTIES

15.    Plaintiff, repeats each and every allegation contained in Paragraphs 1 through 14, above.

RONALD F. BLACK & ASSOCIATES, LLC
1500 WEST 33RD AVENUE, SUITE 100
ANCHORAGE, ALASKA 99503
TELEPHONE (907) 868-5052 • FACSIMILE (907) 929-2994

Exhibit ____1____
Page ___3___ of __7__ Pages

16.    As the builder, Hallmark Investments, LLC, held itself out as competent to build the residence, knowing that the plaintiff was relying on its expertise to achieve the intended result and build the home in a good and workerlike manner.

17.    Hallmark, expressly and impliedly, promised to perform in a good and workerlike manner: that is, to provide workmanship in accordance with good usage and accepted trade practices.  Hallmark failed to provide the requisite quality of work normally expected by one with the knowledge, training and experience necessary for the successful practice of the home building trade, in a manner generally considered proficient by those capable of judging such work.

18.    Hallmark's failures are a proximate cause of damages suffered by the plaintiff.

**COUNT TWO**
BREACH OF CONTRACT

19.    Plaintiff, repeats each and every allegation contained in Paragraphs 1 through 18, above.

20.    Defendant, breached its contract by providing a home that does not meet normally accepted standards of construction – and, which does not meet the minimum standards of the Building Code as adopted by the Municipality of Anchorage.

21.    Hallmark's failures are a proximate cause of damages suffered by plaintiff.

**COUNT THREE**
BREACH OF STATUTORY OBLIGATION

22.    Plaintiff, repeats each and every allegation contained in Paragraphs 1 through 21, above.

23.    It is unlawful for a person or entity in connection with the offer, sale or purchase of non-exempt, subdivided land, to offer or dispose of an interest in such subdivided land

RONALD F. BLACK & ASSOCIATES, LLC
1500 WEST 33ʳᵈ AVENUE, SUITE 100
ANCHORAGE, ALASKA 99503
TELEPHONE (907) 868-5052 • FACSIMILE (907) 929-2994

without such land being registered.  It is further unlawful for a person or entity to dispose of an interest in non exempt, subdivided land, without providing the Buyer with a public offering statement, which fully and accurately discloses all material circumstances and features affecting that land.

24.     The presence of organic soils within the subdivision is a characteristic of the property that is detectible to a "person offering or disposing of subdivided land" had that person exercised reasonable care.

25.     No Public Offering Statement was provided to plaintiff.  In the alternative, if any such Offering Statement was provided, that statement failed to disclose the material fact that the home had been built on conventional strip footings bearing on compressible soils, and without proper engineering or construction oversight.

26.     Plaintiff as a direct and proximate result of defendant's failure to comply with the requirements of the Uniform Land Sales Practices Act, suffered damages.  Plaintiff is a person within that specific  class of consumers entitled to obtain statutory damages.

## COUNT FOUR
### NEGLIGENCE

27.     Plaintiff, repeats each and every allegation contained in Paragraphs 1 through 26, above.

28.     As a builder, and merchant, engaged in the construction of new homes, Hallmark Investments, LLC, owed a duty to the plaintiff and to the public-at-large, to exercise reasonable care in constructing and promoting those homes it was building.

29.     Hallmark Investments, LLC failed to exercise reasonable care when constructing or promoting the development and sale of the home built by it to Mr. Pioner.

RONALD F. BLACK & ASSOCIATES, LLC
1500 WEST 33ʳᵈ AVENUE, SUITE 100
ANCHORAGE, ALASKA 99503
TELEPHONE (907) 868-5052 • FACSIMILE (907) 929-2994

30.    Hallmark Investments, LLC was further negligent by failing to select qualified workmen and subcontractors, or else it was negligent by failing to adequately supervise those persons or entities, over which it had control.

31.    As a direct and proximate result of Hallmark's negligence, Mr. Pioner has suffered personal and property damages, for which he is entitled to be compensated.

WHEREFORE, plaintiff prays for the following relief:

1.    For an order rescinding the Purchase Agreement, requiring that the defendant return of all monies and any other valuable consideration given by plaintiff.

2.    For damages equal to the cost of repair to a condition equal to that as originally promised, and for damages resulting from defendant's breach of contract, breach of warranty or warranties, negligence, breach of statutory obligation. Damages to be awarded in an amount as is proven at the time of trial. Said damages may consist of stigma, other economic loss, and consequential and special damages, including damage to plaintiff's credit history.

3.    For all statutory damages as may be allowed under AS 34.55.030, including all consideration paid for the lot, property taxes paid, costs and full reasonable attorney's fees, together with interest at six percent per annum.

4.    For attorney's fees and costs in bringing this action.

5.    For such other and further relief as the Court deems just and equitable under the circumstances.

DATED this 8th day of November, 2004 at Anchorage, Alaska.

RONALD F. BLACK & ASSOCIATES, LLC
1500 WEST 33RD AVENUE, SUITE 100
ANCHORAGE, ALASKA 99503
TELEPHONE (907) 868-5052 • FACSIMILE (907) 929-2994

RONALD F. BLACK & ASSOCIATES, LLC
Attorneys for Plaintiff

Ronald F. Black
Alaska Bar No. 9211067

## CERTIFICATIONS

The undersigned certifies that the typefaces found in this document are CG Times 13 point and Arial, with a base point size of 12.5.

It is further certified that on the 8th day of November, 2004, true and correct copies of the foregoing were served on:

> Paul Nangle, Esq. (courtesy copy)
> 101 Christensen Drive
> Anchorage, Alaska   99501
>
> Roger Holmes, Esq. (courtesy copy)
> 3948 Clay Products Drive
> Anchorage, Alaska   99517
>
> Paul Stockler, Esq. (courtesy copy)
> 705 Christensen Drive
> Anchorage, Alaska   99501

by:
☒ Mail    ☐ Hand-Delivery    ☐ Facsimile

Ronald F. Black

RONALD F. BLACK & ASSOCIATES, LLC
1500 WEST 33ᴿᴰ AVENUE, SUITE 100
ANCHORAGE, ALASKA 99503
TELEPHONE (907) 868-5052 • FACSIMILE (907) 929-2994

Complaint
*Pioner v. Hallmark Investments, LLC*, Case No. 3AN-04-____
Page 7 of 7

Exhibit     1
Page     7   of   7   Pages

July 27, 2004

**CERTIFIED-RETURN RECEIPT-CLAIM #10013759**

HALLMARK INVESTMENTS LLC
3705 ARCTIC BLVD PMB 2318
ANCHORAGE AK 99503-0000

RE:   Company          :    Great Divide Insurance Company
      Claim Number     :    10013759 and 10014071
      Insured          :    HALLMARK INVESTMENTS LLC
      Claimant         :    Adalberto Pioner v. Hallmark Investments
      Policy Number    :    C GC 0000053833 and C GC 0000053833-01
      Date of Loss     :    Arbitrary (after 7/2003)
      Policy Period    :    08/25/2002 to 08/25/2003 and 08/25/2003 to 08/25/2004

Dear Mr. John DePorter:

As you may know, the Great Divide Insurance Company is in receipt of a letter from the law firm of
Ronald F. Black dated June 15, 2004 alleging defects in the construction of property owned by his client,
Mr. Adalberto Pioner. It is alleged by Mr. Black, that Mr. Pioner entered into a construction agreement
with Hallmark Investments, LLC (hereinafter "Hallmark") to build a single-family home on Lot 17, Block
1 Olympus Subdivision (Plat 73-170) with the address of 9180 Aphrodite Drive in Anchorage, Alaska
(hereinafter "Subject Property'). Mr. Black's statements appear to be supported by a home inspection
completed by Northern Home Inspections (hereinafter "Northern") made at the request of Mr. Pioner. In a
report dated September 29, 2003 Mark Lewis of Northern points out a number of alleged deficiencies with
the construction of the subject property (report attached) including but not limited to electrical, site
grading, defective installation and/or structure of a sliding glass door, soil issues, foundation cracks etc.
Mr. Lewis concludes his report by stating that "the foundation system appears to have failed, resulting in
numerous functional and safety defects with the interior and exterior doors and the garage firewall". On the
basis of the "home experiencing settlement and other problems that affect its habitability", Mr. Black offers
a number of solutions to remedy the issues affecting his client including the re-purchase of the home by
Hallmark for the purchase price of $288,4105.69.

The Great Divide Insurance Company will be providing for your defense in the above noted matter by the
firm of:

> Law Office of Paul D. Stockler
> 1309 West 16th Avenue
> Anchorage AK 99501
> (907) 277-8564, FAX (907) 272-4877

We would ask that you please provide him with whatever assistance they may deem appropriate to protect
your interests in this case.

**Please be advised that while the Law Office of Paul D. Stockler will be defending all causes of action,
there are certain alleged causes of action and damages that are not covered by your commercial**

Exhibit    Z
Page    1    of    11    Pages

general liability policy with the Great Divide. We will therefore be unable to make any payment or pay any judgment based

upon such causes of action or damages. We further reserve the right to withdraw from your defense upon appropriate written notification to you if any time it becomes apparent that none of the damages being claimed by the Mr. Adalberto are covered by this policy.

The insurance policy issued by the Great Divide Insurance Company to Hallmark Investments LLC under policy # C GC 053833 was effective on August 25, 2002 to August 25, 2003 and then again on August 25, 2003 to August 25, 2004 under policy # C GC053833-01. Both policies provide $1,000,000 per occurrence and $2,000,000 in the aggregate for Products/Completed Operations coverage with a deductible of $250.00that applies to both indemnity and defense costs.

Policy C GC 053833 was issued with Form CGL 00 01 07 98 whereas policy # C GC 053833-01 was issued with Form CGL C GC 00 01 10 01. While there are some differences in both policies those differences do not appear to be triggered based on the information provided by Mr. Black and Northern. However, as stated later in this letter the Great Divide Insurance Company reserves all rights and defenses under both policies as additional information warrants such action. Given the fact that construction of the home was completed in July 2003 towards the end of the first policy period coupled with the fact that Northern's inspection occurred in September, 2003 I have taken the liberty to reference the C GL 00 01 10 01 in this reservation of rights letter.

**Under Policy Form CG 00 01 10 01 -COMMERCIAL GENERAL LIABILITY COVERAGE FORM, I specifically bring your attention to SECTION I-COVERAGES, COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE: LIABILITY AND SECTION IV-COMMERCIAL GENERAL LIABILITY CONDITIONS.**

**SECTION I- COVERAGES**

**COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

1.    **Insuring Agreement.**

    a.    We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend any "suit" seeking those damages. We may at our discretion investigate any "occurrence" and settle any claim or "suit" that may result.

    b.    This insurance applies to "bodily injury" and "property damage" only if:

        (1)    The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

        (2)    The "bodily injury" or "property damage" occurs during the policy period; and

        (3)    Prior to the policy period, no insured listed under Paragraph 1. Of Section II – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

Exhibit ___Z___

Page___Z___ of _11_ Pages

  **c.**    "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph **1.** of Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of an      "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

**As you can see by the above noted policy provision, coverage applies to "property damage" only if the occurrence takes place during the policy periods from 8/25/2002 to 8/25/2003 and then again from 8/25/203 to 8/25/2004. No coverage will exist for damages that occurred outside the policy period.**

**I again bring your attention to Policy Form CG 00 01 10 01, COMMERCIAL GENERAL LIABILITY FORM, SECTION I-COVERAGES, specifically Item 2, EXCLUSIONS:**

**2.**    **Exclusions**

This insurance does not apply to:

**b.**    **Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

**(1)**    That the insured would have in the absence of the contract or agreement; or

**(2)**    Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

**(a)**    Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

**(b)**    Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

**I now bring your attention to Policy Form S 002 (4/97), CONTRACTUAL LIABILITY LIMITATION, which states as follows:**

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY

**CONTRACTUAL LIABILITY LIMITATION**
(Incidental Contracts)

This endorsement modifies insurance provided under the following:

Exhibit_____2____
Page____3___ of __11__ Pages

COMMERCIAL GENERAL LIABILITY COVERAGE PART
OWNER AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART

PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

The definition of "insured contract" in DEFINITIONS (Section V) is **replaced** by the following:

"Insured contract" means any written:

a.    Contract for a lease of premises.  However, that portion of the contract for a lease of premises that indemnifies any person or organization for "property damage" to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

b.    Sidetrack agreement;

c.    Easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

d.    Obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality; or

e.    An elevator maintenance agreement.

**As you can see, no coverage would exist for liability assumed in a contract unless the contract meets the definition of an "insured contract". As you can see by the above noted definitions of an "insured contract", no coverage would exist for breaches of contract or breaches of warranties.**

**I once again refer your attention to Policy Form CG 00 01 10 01- COMMERCIAL GENERAL LIABILITY COVERAGE FORM. I specifically draw your attention to SECTION I- COVERAGES, COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY, Item 2, EXCLUSIONS:**

**2.  Exclusions.**

This insurance does not apply to:

**j.    Damage To Property**

"Property damage" to:

(1)    Property you own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

(2)    Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

(3)    Property loaned to you;

Exhibit   2
Page   4   of   11   Pages

(4)    Personal property in the care, custody or control of the insured;

(5)    That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

(6)    That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraphs (1), (3) and (4) of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of 7 or fewer consecutive days. A separate limit of insurance applies to Damage To Premises Rented To You as described in Section III - Limits Of Insurance.

Paragraph (2) of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs (3), (4), (5) and (6) of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph (6) of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

**l.    Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**m.    Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

(1)    A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

(2)    A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**n.    Recall Of Products, Work Or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

(1)    "Your product";

Exhibit    Z

Page    5    of    11    Pages

(2)    "Your work"; or

(3)    "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

**I now bring your attention to SECTION V. DEFINITIONS, specifically the following:**

## SECTION V – DEFINITIONS

3.    "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

8.    "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

    **a.**    It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

    **b.**    You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by:

    **a.**    The repair, replacement, adjustment or removal of "your product" or "your work"; or

    **b.**    Your fulfilling the terms of the contract or agreement.

9.    "Insured contract" means:

    **a.**    A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

    **b.**    A sidetrack agreement;

    **c.**    Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

    **d.**    An obligation, as required by ordinance, to indemnify a municipality, except in con-nection with work for a municipality;

    **e.**    An elevator maintenance agreement;

    **f.**    That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

    Paragraph **f.** does not include that part of any contract or agreement:

        (1)    That indemnifies a railroad for "bodily injury" or "property damage" arising out

Exhibit    2
Page    6    of    11    Pages

of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;

**(2)** That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

    **(a)** Preparing, approving, or failing to prepare or approve maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

    **(b)** Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

**(3)** Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in **(2)** above and supervisory, inspection, architectural or engineering activities.

**13.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

**16.** "Products-completed operations hazard":

**a.** Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

    **(1)** Products that are still in your physical possession; or

    **(2)** Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

        **(a)** When all of the work called for in your contract has been completed.

        **(b)** When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

        **(c)** When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

    Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

**b.** Does not include "bodily injury" or "property damage" arising out of:

    **(1)** The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

    **(2)** The existence of tools, uninstalled equipment or abandoned or unused materials; or

    **(3)** Products or operations for which the classification, listed in the Declarations or in a policy schedule, states that products-completed operations are subject to the

Exhibit____2____
Page____7____of__11__Pages

General Aggregate Limit.

**17.**    "Property damage" means:

    **a.**    Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

    **b.**    Loss of use of tangible property that is not physically injured.  All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

**21.**    "Your product":

    **a.**    Means:

        **(1)**    Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

            **(a)**    You;

            **(b)**    Others trading under your name; or

            **(c)**    A person or organization whose business or assets you have acquired; and

        **(2)**    Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

    **b.**    Includes

        **(1)**    Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

        **(2)**    The providing of or failure to provide warnings or instructions.

    **c.**    Does not include vending machines or other property rented to or located for the use of others but not sold.

**22.**    "Your work":

    **a.**    Means:

        **(1)**    Work or operations performed by you or on your behalf; and

        **(2)**    Materials, parts or equipment furnished in connection with such work or operations.

    **b.**    Includes

        **(1)**    Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

        **(2)**    The providing of or failure to provide warnings or instructions.

**As you can see by the above noted policy exclusions and definitions, no coverage will exist for any**

damage to "your work"," work product" or "products".

Based on information provided to-date there is some indication that a subcontractor by the name of Glacier Masonry and Excavation (hereinafter "Glacier") may have performed grading and excavation at the residence of Mr. Pioner. According to your letter dated October 27, 2003 addressed to Key Insurance, the work of Glacier involved compaction at utility ditch lines and that work may have may have contributed to the "worst settlement " of the home. In addition, Northern's inspection indicated that the "foundation system has failed". That being the case, we refer you to Form S012 (04/99)-EXCLUSION-INDEPENDENT CONTRACTORS and to Form S058 (04/99)-EXCLUSION –SUBSIDENCE OF LAND both of which may have applicability to this loss for which there would be no coverage.

S 012 (04/99)

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

### EXCLUSION - INDEPENDENT CONTRACTORS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following exclusion is **added** to Paragraph 2., Exclusions of Coverage (Section I - Coverages):

> This insurance does not apply to "bodily injury", "property damage", "personal and advertising injury" or medical payments arising out of operations performed for you by independent contractors or your acts or omissions in connection with your general supervision of such operations.

All other Terms and Conditions of this Insurance remain unchanged.

**S058 (04/99)**
### EXCLUSION - SUBSIDENCE OF LAND

This insurance does not apply to "bodily injury", "property damage", "personal and advertising injury" or medical payments caused by, resulting from, contributed to or aggravated by the subsidence of land.

The following definition is **added** to DEFINITIONS (Section V):

> "**Subsidence**" shall mean earth movement, including but not limited to landslide, mud flow, earth sinking, rising or shifting.

The following exclusions are **added** to Paragraph 2., Exclusions of COVERAGE A. Bodily Injury and Property Damage Liability (Section I - Coverages):

**Your policy also contains the following deductible endorsement SO22 (04/97) in the amount of $250.00.**

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT
CAREFULLY.

**DEDUCTIBLE LIABILITY INSURANCE**
(Including Costs and Expenses)

This endorsement modifies coverage provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**SCHEDULE**

| Coverage | Amount of Deductible |
|---|---|
| Bodily Injury Liability (including Costs and Expenses) claim | $ 250.00 per |
| Property Damage Liability (including Costs and Expenses) claim | $ 250.00 per |

1.   Our obligation under the Bodily Injury Liability and Property Damage
     Liability Coverage to pay damages on your behalf applies only to the amount
     of damages in excess of any deductible amounts stated in the schedule as
     applicable to such coverage, and the limits of insurance applicable to each
     "occurrence" for such coverage will be reduced by the amount of such
     deductible.  Aggregate limits for such coverage shall not be reduced by the
     application of such deductible.

2.   The deductible amounts stated are on a **PER CLAIM BASIS** the deductible
     amount applies:

     a.   Under the Bodily Injury Liability, to all damages because of "bodily
          injury" sustained by one person; or

     b.   Under the Property Damage Liability, to all damages because of
          "property damage" sustained by one person or organization;

     as a result of any one "occurrence".

3.   The deductible amount shown in the Schedule applies toward investigation,
     adjustment and legal expenses incurred in the handling and investigation of
     each claim, whether or not payment is made to claimant, compromise
     settlement is reached or claim is denied.

4.   The terms of this insurance, including those with respect to:

     a.   Our right and duty to defend "suits" seeking those damages; and

     b.   Your duties in the event of an "occurrence", claim or "suit",

     apply irrespective of the application of the deductible amount.

Exhibit___Z___
Page___I O___ of __I I___ Pages

5.    We may at our sole election and option, either:

    a.    Pay any part or all of the deductible amount to effect settlement of any claim or "suit" and upon notification of the action taken, you shall promptly reimburse us for such part of the deductible amount as had been paid by us; or

    b.    Upon our receipt of notice of any claim or at any time thereafter, request you to pay over and deposit with us all or any part of the deductible amount, to be held and applied per the terms of this policy.

The Great Divide Insurance Company, by this letter does not waive nor invalidate any of the other terms, conditions or exclusions of this policy.  We specifically reserve the right to exercise any of the other terms, conditions or exclusions of this policy, which now exist or may later become apparent.

If you have any questions about this letter and the Company's position please write to us so that we may address any new facts or analysis that you may have.

Sincerely
Great Divide Insurance Company


Robert Watson
Senior Examiner


cc:
5401 - 0
The Insurance Center
Paul D, Stockler

Exhibit _____ 2 _____
Page_____ 1 1 _of_ 1 1 _____Pages